

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ORIGINAL

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

DOCKETED ON CM
JUN 6 2006
BY _____ 026

| | |
|---|---|
| Case No. | SACV 05-1104 DSF (RNBx) |
| Title | Matthew Evans, et al. v. IAC/Interactive Corp., et al. |

Date   June 5, 2006

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Paul D. Pierson | None present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None present | None present |

**Proceedings:**   (In Chambers) Order GRANTING in Part and DENYING in Part Defendants IAC/InterActiveCorp, Ticketmaster, and Match.com L.P.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Pursuant to F.R.C.P. 12(b)(6) and 9(b)

# I. INTRODUCTION

This matter is currently before the Court on Defendants IAC/InterActiveCorp, Ticketmaster, and Match.com L.P.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Pursuant to F.R.C.P. 12(b)(6) and 9(b) and the supporting Memorandum of Points and Authorities ("Motion"), filed April 6, 2006. Plaintiffs' Opposition to Defendants IAC/InterActiveCorp, Ticketmaster, and Match.com L.P.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Opposition") was filed on April 18, 2006. The Reply Brief of Defendants IAC/InterActiveCorp, Ticketmaster, and Match.com, L.P. in Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Pursuant to F.R.C.P. 12(b)(6) and 9(b) ("Reply") and the Declaration of Joy T. Teitel in Support of Defendants' Reply Briefs in Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint and Motion to Stay the Tenth Claim for Relief in Plaintiffs' First Amended Class Action Complaint[1] ("Teitel Declaration") were filed on April 24, 2006.

30

---

[1] Defendants IAC/InterActiveCorp, Ticketmaster, and Match.com, L.P.'s Motion to Stay the Tenth Claim for Relief in Plaintiffs' First Amended Class Action Complaint will be addressed in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Having carefully considered the papers submitted by the parties, except as noted,[2] the Court GRANTS the Motion in part and DENIES it in part.

## II. FACTUAL ALLEGATIONS

The following allegations are taken from Plaintiffs' First Amended Complaint ("FAC"), filed February 1, 2006 and amended in a Notice of Errata to First Amended Class Action Complaint filed February 6, 2006. The Court accepts these allegations as true for purposes of this Motion only.

Match.com is an online dating service with over 15 million members and at least 1 million paying subscribers. (FAC ¶¶ 8, 23.) Plaintiffs allege that Defendant IAC/InterActiveCorp ("IAC") is the owner of Match.com (id. ¶ 21), Defendant Match.com, L.P. is an operating business of IAC[3] (id. ¶ 23), and Defendant Ticketmaster is the general partner of Match.com (id. ¶ 22); however, Plaintiffs are not aware of the precise nature of the relationship between the three companies. (Id. ¶ 26.) The three companies will be referred to collectively as the "Match.com Defendants." Defendant Autumn Marzec is an individual providing services to Match.com. Plaintiffs Matthew Evans, Steve Uman, David Harzberg, Ron Oakes, Laura Tarleton, Randy Snyder, Krista Bauer, and Addie Boudreau are subscribers to the Match.com service; they bring this action individually and as representatives of all persons similarly situated. (Id. ¶¶ 11-19.) Plaintiffs seek to certify three plaintiff classes. The purported National Class consists of all current and former subscribers to Match.com with the exception of directors, officers, and/or employees of Defendants and their affiliates, the immediate family members

---

[2] Defendants IAC/InterActiveCorp, Ticketmaster, and Match.com L.P.'s Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint and Motion to Stay Plaintiffs' Tenth Claim for Relief was filed along with the Motion on April 6, 2006. Plaintiffs' Objections and Opposition to Defendants' Request for Judicial Notice were filed on April 18, 2006. The Court declines to take judicial notice of the documents submitted by the Match.com Defendants, because the documents are not an appropriate subject for judicial notice or are irrelevant to the Court's decision.

[3] Plaintiffs also refer to Defendant Match.com, L.P. simply as Match.com, and characterize the entity as either a subsidiary or operating business of IAC. (FAC ¶ 26.) For purposes of this motion, the Court refers to this entity as Match.com, L.P., to distinguish it from the Match.com service. In some instances, it is unclear whether the FAC uses the name Match.com to refer to the service, Match.com, L.P., or all three of the Match.com Defendants. Reading the FAC in the light most favorable to Plaintiffs, the Court generally assumes that references to Match.com refer to all three of the Match.com Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

thereof, and the attorneys for the class and any employees of those attorneys or their firms. (Id. ¶ 34.) The California Class consists of all individuals in the National Class who were California residents when they subscribed to Match.com. (Id. ¶ 35.) The California Sub-Class consists of all individuals in the California Class who were senior citizens or disabled persons at the time of subscription, as used in California Civil Code §§ 1761 and 3345. (Id. ¶ 36.)

Paying subscribers to Match.com receive certain benefits that members do not, including the ability to respond to e-mails from members and participate in "conversations" with other members. (Id. ¶ 8.) New subscribers may select from three options: a one-month trial for $29.99 per month, a three-month trial for $16.99 per month, or a six-month trial for $12.99 per month. (Id. ¶ 49.) Unless the subscriber resigns during the trial period, the membership is automatically renewed for the same duration and the subscriber is billed. (Id.) A new subscriber fills out a profile of personal information to be viewed by other members. (Id. ¶ 50.) Members can search the database and can e-mail or send "winks" to persons they find interesting. (Id.) A wink is a pre-scripted message that one member can send to another to express interest. (Mot. 1 n.1.) Match.com also matches subscribers to other members by selecting people who meet a subscriber's criteria. (FAC ¶ 50.) Match.com has a written Privacy Policy explaining how the service uses members' personal information. (Id. ¶ 51 and Ex. A.) Match.com also has a written Terms of Use Agreement. (Id. ¶ 54 and Ex. B.)

Plaintiffs allege that Defendants engage in several forms of misconduct not disclosed in either the Privacy Policy or the Terms of Use Agreement. First, Match.com sends "winks" to customers whose subscriptions are about to end or who have acted to prevent automatic renewal; these winks appear to be from other interested members but in fact are generated by a Match.com employee or a computer program. (Id. ¶ 57.) The Match.com agent communicates with the customer online using pre-scripted language. (Id. ¶ 58.) The goal is to retain subscribers by fostering the belief that they will meet a prospective match. (Id.)

Second, Match.com monitors and restricts subscribers' e-mails to other members. (Id. ¶ 59.) For instance, the service may limit the number of e-mails a subscriber can send out. (Id. ¶ 60.) Also, subscribers who sign up but cancel during the 3-day cancellation window may have their e-mails reviewed by Match.com. (Id. ¶ 61.) If such a subscriber sends an e-mail to another member, Match.com may shut down the account, stating that the sender has abused the service. (Id.)

Third, Match.com fails to protect members and subscribers from identified predators and scam artists who post profiles that Match.com knows to be false or fraudulent. (Id. ¶¶ 62-63.) Although Match.com has received complaints about such profiles, and could detect and remove them or warn subscribers of their presence, it fails to do so because it seeks to maximize the claimed size of its member and subscriber

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

bases.  (<u>Id.</u> ¶¶ 63-64.)

Fourth, Match.com uses what Plaintiffs term "date bait."  Match.com hires agents to contact subscribers with winks, and in some cases to go on dates to encourage customer retention and word-of-mouth advertising.  (<u>Id.</u> ¶ 68.)  These agents read subscribers' e-mails to other members, then use the information they gather to make themselves appear to be perfect matches for those subscribers.  (<u>Id.</u> ¶ 69.)  These agents include Defendant Autumn Marzec.  (<u>Id.</u> ¶ 68.)  Plaintiff Evans was contacted by Marzec with a wink, and later went on a date with Marzec.  (<u>Id.</u> ¶ 72.)  At that time, Marzec told Evans that she was employed by Match.com.  (<u>Id.</u> ¶¶ 73-74.)

Finally, Match.com touts its use of "matching technology" software to find matches; however, Match.com does not include a subscriber's profile information when using the software unless the subscriber updates his or her profile every thirty days.  (<u>Id.</u> ¶ 75.)

Plaintiffs further allege that Match.com affiliates, who advertise Match.com on their own websites, earn a commission on any new subscriptions; thus the affiliates have a strong incentive to participate in this deceptive conduct as well.  (<u>Id.</u> ¶¶ 77-78.)

### III. LEGAL STANDARD

A court can dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Id.</u> at 47 (footnote omitted).  <u>See also</u> <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 508 (2002) (A complaint "must contain only a short and plain statement of the claim showing the pleader is entitled to relief"); <u>Maduka v. Sunrise Hosp.</u>, 375 F.3d 909, 912 (9th Cir. 2004).  Dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

The plaintiff bears the burden of pleading sufficient facts to state a claim.  Courts will not supply essential elements of a claim that are not initially pled.  <u>Richards v. Harper</u>, 864 F.2d 85, 88 (9th Cir. 1988).  In ruling on a motion to dismiss, the Court must accept as true all material factual allegations in the complaint and must construe them in the light most favorable to the plaintiff.  <u>Cooper v. Pickett</u>, 137 F.3d 616, 623 (9th Cir. 1997).  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (internal citations omitted). Dismissal is proper if a complaint is vague, conclusory, general, or fails to set forth any material facts in support of the allegation. See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983). Application of a "heightened pleading standard" is inappropriate because it conflicts with the "notice pleading" standard of Rule 8(a)(2). Swierkiewicz, 534 U.S. at 512 (no higher standard in employment cases); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (no higher standard in civil rights case). Heightened pleading standards should only be applied when required by the Federal Rules. Empress LLC v. San Francisco, 419 F.3d 1052, 1055 (9th Cir. 2005).

Allegations of fraud are excepted from the "notice pleading" standard of Rule 8(a)(2). Swierkiewicz, 534 U.S. at 513; Leatherman, 507 U.S. at 168. Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted). "The Plaintiff must set forth what is false or misleading about a statement, and why it is false." In re GlenFed Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds). "Rule 9(b)'s particularity requirement applies to state-law causes of action." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103 (9th Cir. 2003).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, material properly submitted as part of the complaint may be considered. Id.; Cooper, 137 F.3d at 622. Moreover, a document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. See Townsend v. Columbia Operations, 667 F.2d 844, 848-49 (9th Cir. 1982). Where the contents of a document are alleged, but it is not attached to the complaint, the document may still be considered if its authenticity is not challenged. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (citations and internal quotation marks omitted), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). A court may consider the full text of documents only partially quoted in the complaint. Cooper, 137 F.3d at 623.

A matter that is properly the subject of judicial notice may be considered in ruling on a Rule 12(b)(6) motion. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citation omitted). A district court may consider "[r]ecords and reports of administrative bodies," id., and other "matters of public record outside the proceedings," such as motions filed in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

other cases. <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986) (citations omitted).

A court may not grant a motion to dismiss simply because plaintiff seeks a remedy to which he is not entitled or does not seek appropriate relief. "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." <u>Doe v. U.S. Dep't of Justice</u>, 753 F.2d 1092, 1104 (D.C. Cir. 1985).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986). Courts may dismiss claims with prejudice where plaintiffs have failed to plead with the requisite particularity after "repeated opportunities." <u>See</u> <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal of plaintiff's fifth amended complaint with prejudice).

Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different facts. <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995).

## IV. <u>DISCUSSION</u>

Plaintiffs bring a number of claims for relief: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (2) fraud and deceit; (3) invasion of privacy; (4) negligent misrepresentation; (5) unfair business practices in violation of California Business and Professions Code §§ 17200-17210, by Plaintiffs Evans, Snyder, Bauer, and Boudreau (the "California Plaintiffs") only; (6) unfair and deceptive business practices in violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1784, by the California Plaintiffs only; (7) false advertising in violation of California Business and Professions Code §§ 17500-17594, by the California Plaintiffs only; (8) unlawful competition in violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17000-17101, by the California Plaintiffs only; (9) breach of implied covenant of good faith and fair dealing; (10) violation of California Civil Code §§ 1694-1694.4, by the California Plaintiffs; (11) breach of contract; and (12) declaratory relief under 22 U.S.C. § 2201. By this Motion, the Match.com Defendants seek to dismiss the first, second, and fourth claims for relief for failure to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The Match.com Defendants also seek to dismiss the first through eighth and tenth through twelfth claims for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

## A. <u>Violation of RICO</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Plaintiffs' first claim for relief alleges violation of 18 U.S.C. § 1962(c), which provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." Plaintiffs allege that Defendants committed wire fraud in violation of 18 U.S.C. § 1343. Under 18 U.S.C. § 1961(1), wire fraud constitutes racketeering activity as prohibited by RICO.

### 1. **Plaintiffs Have Pleaded Wire Fraud with Sufficient Particularity**

The Match.com Defendants argue that Plaintiffs' RICO claim should be dismissed for failure to plead wire fraud with particularity, as required by Rule 9(b). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Schreiber Distrib. Co., 806 F.2d at 1400 (citations omitted). The purpose of Rule 9(b) is to "ensure[] that the allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (citation omitted).

To state a claim for wire fraud, "a plaintiff must allege: (1) a scheme or artifice to defraud; (2) use of United States wires or interstate wires; and (3) specific intent to defraud." Camp v. Pac. Fin. Group., 956 F. Supp. 1541, 1550 (C.D. Cal. 1997) (citations omitted). Use of the Internet can constitute a use of the United States wires within the meaning of § 1343. See, e.g., United States v. Pirello, 255 F.3d 728 (9th Cir. 2001) (defendant convicted of wire fraud for placing false advertisements on Internet classified-ads website).

The FAC cites four types of conduct constituting wire fraud in connection with the RICO claim: (1) the issuance of false winks by Match.com employees to subscribers; (2) the maintenance of false and misleading member profiles; (3) the issuance of the Privacy Policy and Terms of Use Agreement, both of which fail to disclose the other types of misconduct in which Defendants allegedly engage; and (4) the collection of payments from subscribers via online payment systems where those payments were obtained through fraudulent means. (FAC ¶ 86.)

The Match.com Defendants contend that the FAC does not identify a time, place, or recipient for even one of these alleged false winks. However, Plaintiffs do point to a specific allegedly fraudulent wink: a wink sent by Defendant Marzec to Plaintiff Evans. (FAC ¶ 72.) Plaintiffs allege facts showing that the wink was fraudulent because Defendant Marzec was employed by Match.com to monitor Evans and other subscribers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

and seek dates with them (id. ¶ 73); thus the wink was misleading because it did not come from a Match.com member. Plaintiffs have alleged the existence of at least one fraudulent wink with sufficient particularity to satisfy 9(b).

It is unclear whether Plaintiffs allege that Defendants themselves actually posted fraudulent profiles, or merely that Defendants failed to remove profiles it knew to be fraudulent. (FAC ¶¶ 62-63, 86(2).) In any event, the Match.com Defendants are correct that the FAC does not identify a single specific profile that is false or misleading.

Plaintiffs do meet the Rule 9(b) requirement with respect to alleged misrepresentations or omissions contained in the Privacy Policy and Terms of Use Agreement. The Privacy Policy states that Match.com may collect three types of information from members: personal information, such as name and contact information; financial information, such as credit card numbers; and a variety of demographic information. (FAC Ex. A.) Demographic information specifically includes any information included in a member's profile (public information), and "the content of communications between [that member] and other members over the Site" such as "one-on-one communications" (non-public information). (Id.) Personal information may be used "to contact [members] in connection with [their] transactions and other activities on the Site" or to send "newsletters, information, offers and other promotional materials for Match.com's or third parties' goods or services." (Id.) Demographic information, including non-public information, may be reviewed by Match.com and used "to tailor the Site and communications to [a member's] interests." (Id.)

Arguably, the Privacy Policy encompasses the conduct alleged by Plaintiffs. The Privacy Policy clearly contemplates that Match.com will collect and review communications between members. The sending of false winks or the setting up of false profiles might be considered "tailor[ing] the Site and communications" to a particular member. Furthermore, the Privacy Policy allows Match.com to use personal information to contact members in a broad variety of ways. Thus the Privacy Policy may not be false or contain any misleading omissions. However, the Privacy Policy does not expressly state that Match.com will set up false profiles, send winks, or hire date bait. A reasonable person could be misled by the Privacy Policy to believe that Match.com would not engage in such conduct. Plaintiffs have pleaded with particularity the alleged omissions from the Privacy Policy and why those omissions are fraudulent, as required by Rule 9(b).

The Terms of Use Agreement does not appear to contain any terms stating that Match.com will set up false profiles, send winks, or hire date bait. (FAC Ex. B.) Furthermore, the Terms of Use Agreement states that "[t]he Website is for the personal use of individual Members only and may not be used in connection with any commercial endeavors" – thus the Terms of Use Agreement prohibits any "Non Commercial Use by Members." (Id. ¶ 3.) This provision could be read to prohibit commercial use by persons

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

posing as members but in reality employed by Match.com, such as Defendant Marzec. Again, Plaintiffs have pleaded with sufficient particularity the alleged omissions from the Terms of Use Agreement and why those omissions are misleading.

Plaintiffs' final basis for their allegations of wire fraud is the collection of payments from subscribers; however, Plaintiffs have not alleged that this conduct comprised any misrepresentations not already listed above.

Because Plaintiffs have identified specific instances of fraudulent winks and of misleading statements in the Privacy Policy and Terms of Use Agreement, Plaintiffs have met their burden under Rule 9(b).

### 2. Plaintiffs Have Alleged the Existence of a RICO Defendant Distinct from the RICO Enterprise

The Match.com Defendants further argue that Plaintiffs' first claim for relief should be dismissed under Rule 12(b)(6). "The elements of a RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Howard v. Am. Online Inc., 208 F.3d 741, 746 (9th Cir. 2000) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). The Match.com Defendants argue that Plaintiffs have not alleged the existence of a person separate from the enterprise engaged in racketeering activity. The FAC alleges that Defendant IAC and its related entities[4] together constitute an enterprise for purposes of RICO, as defined in 18 U.S.C. § 1961(4). (FAC ¶ 82.) Although Plaintiffs purport to bring RICO claims against all Defendants (FAC 27:7), the FAC specifically names only "Match.com" as a "person" for purposes of RICO (FAC ¶ 81). Nevertheless, reading the FAC in the light most favorable to Plaintiffs, the Court considers possible RICO claims against all three of the Match.com Defendants.

The Supreme Court has explained that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushmer Promotions, Ltd. v. King, 533 U.S. 158, 162 (2001). Thus, under § 1962(c), a corporation alone cannot constitute both the person liable and the enterprise engaged in

---

[4] The Court again notes that the relationship between IAC, Ticketmaster, Match.com, L.P., and Match.com is unclear, as Plaintiffs themselves admit. (FAC ¶ 26.) Defendants do little to clarify the situation, stating only that Match.com is a wholly-owned subsidiary of IAC. (Mot. 3:26-27.) For purposes of this analysis, however, Plaintiff's allegations that Ticketmaster and Match.com, L.P. are "operating business[es]" of IAC and that Marzec provides services to Match.com (FAC ¶¶ 22(b), 23(c), 24(b)) are sufficient for the Court to treat Defendants as related entities, with IAC as the parent corporation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

racketeering. <u>Wilcox v. First Interstate Bank, N.A.</u>, 815 F.2d 522, 529 (9th Cir. 1987).[5]
A group of corporations, however, can constitute an enterprise. <u>United States v. Blinder</u>,
10 F.3d 1468, 1473 (9th Cir. 1993). Furthermore, a single corporate defendant may be
both the person and a member of the enterprise. <u>River City Markets, Inc. v. Fleming</u>
<u>Foods W., Inc.</u>, 960 F.2d 1458, 1461 (9th Cir. 1992). Finally, "a plaintiff is free to name
all members of an association-in-fact enterprise as individual defendants." <u>Id.</u> at 1462
·(citations omitted).

The question posed in this case is whether a corporation and its subsidiaries can
together constitute an enterprise within the meaning of § 1962(c), where either the
corporation or a subsidiary is the alleged RICO person. Courts generally appear to be in
agreement that a § 1962(c) claim is improper if the parent corporation is the alleged
RICO person and a wholly-owned subsidiary is the alleged enterprise. <u>See</u> <u>Brittingham</u>
<u>v. Mobil Corp.</u>, 943 F.2d 297, 301 (3d Cir. 1991) (holding that distinctness requirement
"would be eviscerated if a plaintiff could successfully plead that the enterprise consists of
a defendant corporation in association with employees, agents, or affiliated entities acting
on its behalf"); <u>Odishelidze v. Aetna Life & Cas. Co.</u>, 853 F.2d 21, 23-24 (1st Cir. 1988)
(rejecting RICO claim against defendant corporation where plaintiff alleged enterprise
consisting of the corporation and its named subsidiaries, officers, directors, and
employees); <u>Westways World Travel v. AMR Corp.</u>, 182 F. Supp. 2d 952, 958 (C.D. Cal.
2001) (citing <u>Brittingham</u>); <u>see also</u> <u>Sever v. Alaska Pulp Corp.</u>, 978 F. 2d 1529, 1534
(9th Cir. 1992) (citing <u>Brittingham</u> and noting that "the inability of a corporation to
operate except through its officers . . . poses a problem only when the *corporation* is the
named defendant"). A plaintiff may circumvent this rule only by pleading "facts which,
if assumed to be true, would clearly show that the parent corporation played a role in the
racketeering activity which is distinct from the activities of its subsidiary." <u>Lorenz v.</u>
<u>CSX Corp.</u>, 1 F.3d 1406, 1412 (3d Cir. 1993). Plaintiffs have not done so. Thus
Plaintiffs cannot state a RICO claim against IAC.

The situation is different with respect to RICO claims against Match.com, L.P. or
Ticketmaster. The Ninth Circuit's decision in <u>Sever</u> suggests that such a claim is
permissible. In <u>Sever</u>, the court held that a plaintiff could state a RICO claim against
several individual officers of a corporation where the corporation itself was named as the
enterprise. <u>Sever</u>, 978 F.2d at 1534. The situation in <u>Sever</u> was different, obviously,
because the RICO persons were individuals.

Other courts considering similar facts have focused on the narrower question of
whether a RICO plaintiff may allege that a corporation is the RICO enterprise and its

---

[5] In contrast, 18 U.S.C. § 1962(a) and (b) do not require the existence of an enterprise separate
from the corporation itself. <u>Wilcox</u>, 815 F.2d at 529 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

subsidiary is the RICO person. See Westways World Travel, 182 F. Supp. 2d at 957-59. In Haroco, Inc. v. American National Bank & Trust Co. of Chicago, 747 F.2d 384, 402 (7th Cir. 1984), the Seventh Circuit upheld a RICO claim where a subsidiary was the person and its parent corporation was the enterprise. The court explained that § 1962(c) "requires only some separate and distinct existence for the person and the enterprise, and a subsidiary corporation is certainly a legal entity distinct from its parent." Id. In contrast, the Second Circuit has held that a RICO claim could not be sustained against a subsidiary corporation where the enterprise was the parent corporation, noting that "the individual defendants were acting within the scope of a single corporate structure, guided by a single corporate consciousness." Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1998); see also Bodtker v. Forest City Trading Group, CV-99-533-ST, 1999 U.S. Dist. LEXIS 15345, at *17-18 (D. Or. Sept. 9, 1999) (noting that several other circuits have agreed with the Discon view).

The Court finds the Haroco view more consistent with the Ninth Circuit's holding in Sever, as well as with the principle that a single corporate defendant may be both the person and a member of the enterprise. See River City Markets, Inc., 960 F.2d at 1461. Furthermore, the Discon decision itself suggests that had the individual defendants been more independent as a factual matter from the parent corporation, the result might have differed. Discon, 93 F.3d at 1063-64. Even if the Court were to adopt the Discon view, Plaintiffs might well be able to prove facts showing that Match.com, L.P. or Ticketmaster was substantially independent from IAC, thus justifying a RICO claim against it. Cf. Lorenz, 1 F.3d at 1412 (allowing such a factual showing to support a RICO claim against a parent corporation as the RICO person where its subsidiary is the enterprise).

The Court therefore dismisses the RICO claim as to Defendant IAC because Plaintiff has failed to allege that IAC is a person distinct from the alleged enterprise. The Court also dismisses the RICO claim against Defendant Marzec *sua sponte*, since the claim includes no specific allegations against her as a RICO person. At this early stage of the pleadings, when the relationship among the entities and other relevant facts are unclear, Plaintiffs have adequately pleaded a RICO claim as to the remaining Defendants.

**B. Fraud and Deceit**

The Match.com Defendants argue that Plaintiffs' second claim for relief based on fraud and deceit should be dismissed for failure to plead fraud with sufficient particularity, as required by Rule 9(b).

Under California law, an action for fraud requires five elements: (1) a false representation, (2) made with knowledge of falsity and (3) intent to induce reliance, (4) which does in fact induce justifiable reliance by the complainant (5) resulting in damages. Fanucchi & Limi Farms v. United Agri Prods., 414 F.3d 1075, 1088 (9th Cir. 2005) (citation omitted); 5 B.E. Witkin, Summary of California Law § 772 (10th ed. 2005)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

(citations omitted).  As noted above, Rule 9(b) requires that "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation" be pleaded with particularity.  <u>Schreiber Distrib. Co.</u>, 806 F.2d at 1400 (citations omitted).  When the claim rests on an omission, however, the standard is slightly different.  In such cases, "the plaintiff may find alternative ways to plead the particular circumstances of the fraud.  For example, a plaintiff cannot plead either the specific time of the omission or the place . . . ."  <u>Washington v. Baenziger</u>, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (citation omitted).  ·

Plaintiffs' fraud allegations rest on three types of conduct: (1) misrepresentations in the Privacy Policy and the Terms of Use Agreement that subscribers' personal information and e-mails would not be disclosed, whereas Defendants did disclose that information to Match.com employees to aid in their scheme of luring subscribers out on dates; (2) the use of date bait teams to pose as Match.com members and go out on dates with actual subscribers; and (3) the issuance of false winks to subscribers.  (FAC ¶ 96.)  Furthermore, Plaintiffs allege elsewhere in the FAC that Defendants set up false and misleading member profiles or allowed fraudulent profiles created by third parties to persist on the site with knowledge of their falsity.  (FAC ¶ 86(2).)  Plaintiffs allege that all of the Defendants had knowledge of the falsity of these statements at the time they were made.  (<u>Id.</u> ¶ 97.)  Plaintiffs also allege that Defendants made these fraudulent misrepresentations or omissions with the intent of inducing subscribers to renew their subscriptions, and to foster positive word-of-mouth advertising from subscribers.  (<u>Id.</u> ¶ 99.)  Plaintiffs further allege reliance and damages.  (<u>Id.</u> ¶¶ 100-102.)

As discussed in connection with Plaintiffs' allegations of wire fraud, the Privacy Policy may be misleading, because it did not disclose that subscribers' personal information will be used in sending false winks or setting up false dates.  Similarly, the Terms of Use Agreement may be misleading in that it does not state that Match.com employees will use the site while posing as members for Match.com's commercial purposes.  Thus the Privacy Policy and the Terms of Use Agreement may be a basis for a fraud claim.

Further, the FAC does identify a specific instance of a fraudulent wink.  (<u>Id.</u> ¶ 72.)  This allegation alone is sufficient to support a fraud claim, at least by Plaintiff Evans against Defendant Marzec.  An employer may be held liable for fraud committed by an employee in the scope of her employment.  <u>Grigsby v. Hagler</u>, 25 Cal. App. 2d 714, 716 (1938) (citations omitted); 3 Witkin, <u>supra</u>, § 192(1); <u>see also</u> Cal. Civ. Code § 2338 ("[A] principal is responsible to third persons . . . for [its agent's] willful omission to fulfill the obligations of the principal.").  Because Plaintiffs have alleged that the Match.com Defendants employed Marzec precisely for the purpose of sending fraudulent winks and going on dates (FAC ¶ 68), these Defendants may be liable to Evans as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Plaintiffs have also identified a specific instance in which Defendants used date bait. According to the FAC, after Marzec sent a wink to Evans, the two went on a date. (Id. ¶ 72.) However, the FAC does not identify any false or misleading statement made by Marzec beyond the initial wink; indeed, the FAC alleges that Marzec told Evans during the date that she was employed by Match.com. (Id. ¶¶ 73-74.) Thus the date itself cannot serve as the basis for a fraud claim.

Nor does the FAC identify a single specific instance of a false or misleading profile set up by Defendants to deceive members.

Nevertheless, Plaintiffs have properly pleaded fraud under Rule 9(b) based on the Privacy Policy and Terms of Use Agreement and the use of false winks. Furthermore, Plaintiffs have pleaded all of the other elements of fraud. Neither Rule 9(b) nor Rule 12(b)(6) justifies dismissal.

**C. Invasion of Privacy**

Plaintiffs' third claim for relief alleges invasion of privacy. The use of consumer records and personal information is governed by California Civil Code §§ 1798.80-1798.84. A civil action for damages may be brought by any customer injured by a violation of these provisions. Cal. Civ. Code § 1798.84(b).

Under California Civil Code § 1798.83(a), "if a business has an established business relationship with a customer and has within the immediately preceding calendar year disclosed personal information . . . to third parties, and if the business knows or reasonably should know that the third parties used the personal information for third parties' direct marketing purposes," that business must provide the customer with a list of the types of information disclosed, as well as the names and addresses of the third parties who received that information. The consumer must first make a "written or electronic mail request, or, if the business chooses to receive requests by toll-free telephone or facsimile numbers, a telephone or facsimile request." Id. The Match.com Defendants point out, and Plaintiffs concede (Opp'n 7:26-27), that Plaintiffs have not alleged that any such request was made. Furthermore, Plaintiffs have not alleged that their information was disclosed to any third parties, but only to employees and agents of the Match.com Defendants. Thus Plaintiffs have failed to state a claim under California Civil Code § 1798.83(a).

As for California Civil Code § 1798.81.5, this provision requires any business that owns personal information to "implement and maintain reasonable security procedures and practices . . . to protect the personal information from unauthorized access, . . . use, . . . or disclosure. Cal. Civ. Code § 1798.81.5(b). The statute also mandates that a business disclosing personal information to a nonaffiliated third party must contractually require the third party to employ similar procedures. Cal. Civ. Code § 1798.81.5(c). The essence of Plaintiffs' claims, however, is the use of personal information in a manner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

specifically authorized by the Match.com Defendants. Plaintiffs have not alleged that their information was disclosed to anyone other than an employee or agent of the Match.com Defendants, or third-party affiliate as specifically permitted by the Privacy Policy. Though Plaintiffs broadly allege that Defendants have failed to protect subscribers' data from loss (FAC ¶ 111), none of the allegations in the Complaint suggest that the data was susceptible to misappropriation by anyone not authorized by the Match.com Defendants. Plaintiffs have failed to state a claim under California Civil Code § 1798.81.5.

Plaintiffs contend that their invasion of privacy claim does not rely on these statutes alone, but is also based on the common law tort of invasion of privacy and on article I, section 1 of the California Constitution.

The common law tort of invasion of privacy encompasses four types of wrongs: "(1) the commercial appropriation of the plaintiff's name or likeness . . . ; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) public disclosure of true, embarrassing private facts concerning the plaintiff; and (4) publicity which places the plaintiff in a false light in the public eye." Kinsey v. Macur, 107 Cal. App. 3d 265, 270 (1980); see also 5 Witkin, supra, § 651(1). Only the third, public disclosure of personal facts, appears relevant here. Under California law, an action for public disclosure of private facts requires "a public disclosure, and not a private one; there must be, in other words, publicity." Schwartz v. Thiele, 242 Cal. App. 2d 799, 805 (1966) (citations and internal quotation marks omitted). Thus "except in cases of physical intrusion the tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." Id. (citation and internal quotation marks omitted). Here, Plaintiffs have alleged only that Defendants disclosed subscribers' personal information to Match.com employees and agents; there has been no broad public disclosure. This is insufficient to support a tort action for invasion of privacy. Cf. Kinsey, 107 Cal. App. 3d at 272 (finding that mailing of letters to "a diverse group of [approximately 20] people living in several states and totally unconnected either socially or professionally" was sufficient to constitute "'mass exposure'").

Article 1, section 1 of the California Constitution provides that all people have an inalienable right to privacy. "The constitutional provision is self-executing; hence, it confers a judicial right of action on all Californians. Privacy is protected not merely against state action; it is considered an inalienable right which may not be violated by anyone." Porten v. Univ. of San Francisco, 64 Cal. App. 3d 825, 829 (1976) (citations omitted). The privacy provision guards against several types of harms:

(1) 'government snooping' and the secret gathering of personal information;
(2) the overbroad collection and retention of unnecessary personal
information by government and business interests; (3) the improper use of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records. White v. Davis, 13 Cal. 3d 757, 775 (1975).

The California Supreme Court identified the elements of a constitutional claim for invasion of privacy in Hill v. National Collegiate Athletic Ass'n, 7 Cal. 4th 1 (1994). First, a plaintiff must identify a "specific, legally protected privacy interest," which can be either "(1) [an] interest[] in precluding the dissemination or misuse of sensitive and confidential information . . . ; [or] (2) [an] interest[] in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." Id. at 35. Second, a plaintiff must have "a reasonable expectation of privacy," in light of the "customs, practices, and physical settings surrounding particular activities." Id. at 36. The Court must also consider any "opportunities to consent voluntarily to activities impacting privacy interests." Id. at 37. Third, there must be an "invasion[] of privacy . . . sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." Id. A defendant may plead as an affirmative defense "that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." Id. at 40. Consent is also an available defense. Id.

Plaintiffs' claims for invasion of privacy are based on allegations that Defendants engaged in "the unlawful misappropriation, disclosure, and use of [Plaintiffs'] private and confidential information." (FAC ¶ 113.) Specifically, Plaintiffs allege that Defendants reviewed and monitored their e-mails to other members (id. ¶ 59), then used that information to make Match.com agents seem like ideal matches in e-mails and during actual dates (id. ¶ 69). The Match.com Defendants argue that Plaintiffs did not have a reasonable expectation of privacy because Plaintiffs consented to the collection and review of their information, including the content of communications with other members. (Mot. 10:21-11:14.) However, as discussed above, the Privacy Policy states only that non-public demographic information may be used "to tailor the Site and communications to [a member's] interests." (FAC Ex. A.) This may not encompass the purposes for which Defendants allegedly used Plaintiffs' information. While Plaintiffs have consented to some monitoring and use of their information, it is unlikely that they have consented to Defendants' alleged actions. The California Supreme Court's decision in Hill makes clear that the question of whether a plaintiff had a reasonable expectation of privacy is a mixed question of law and fact that requires inquiry into a number of highly variable factors. Hill, 7 Cal. 4th at 36-37, 40.

The Court dismisses Plaintiffs' invasion of privacy claim to the extent it relies on California Civil Code §§ 1798.80-1798.84 or on common law. However, the Court finds that Plaintiffs may be able to state a claim for violation of their right to privacy under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

California Constitution.[6]

## D. Negligent Misrepresentation

Plaintiffs' fourth claim for relief alleges negligent misrepresentation. Under California law, negligent misrepresentation is "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code § 1710(2); see also Cal. Civ. Code § 1572(2) (in contract law, negligent misrepresentation is "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true"). "Parties cannot read something into a neutral statement in order to justify a claim for negligent misrepresentation. The tort requires a positive assertion. An implied assertion or representation is not enough." Diediker v. Peelle Fin. Corp., 60 Cal. App. 4th 288, 297-98 (1997) (alterations, citations, and internal quotation marks omitted). Defendants allege that Plaintiffs have not identified any positive assertion of fact constituting negligent misrepresentation; thus Defendants argue that dismissal is proper under both Rule 9(b) and Rule 12(b)(6).

Plaintiffs first allege that the Privacy Policy and Terms of Use Agreement misrepresented that Match.com would use Plaintiffs' information only in ways listed in those documents. (FAC ¶ 118.) However, Match.com allegedly used this information to give its agents inside knowledge about Plaintiffs to be used on false dates, and to issue false winks. (Id.) Specifically, the FAC mentions Match.com's "representations in its Privacy Policy and in the Terms of Use Agreement," and alleges that Defendants "failed to include in those contracts that subscriber[s'] personal information and emails are reviewed and utilized by [Match.com] employees to deceive subscribers." (Id. ¶ 119.)

Mere failure to disclose certain facts cannot be a basis for a negligent misrepresentation claim; Plaintiffs must allege a specific false or misleading statement. The Privacy Policy provides a list of ways in which Match.com purports to use subscriber information. (FAC Ex. A.) As discussed above, this list may not include the conduct alleged here, including the use of non-public demographic information to tailor false

---

[6] Defendants contend that Plaintiffs' invasion of privacy claim is barred by the Federal Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). The CDA "precludes treatment as a publisher or speaker for '*any* information provided by *another* information content provider.'" Carafano v. Metrosplash, Inc., 339 F.3d 1119, 1125 (9th Cir. 2003) (emphasis in original) (quoting 47 U.S.C. § 230(c)(1)). The CDA is simply inapposite in connection with the invasion of privacy claim, because this claim rests entirely on allegations of disclosures made by Defendants themselves. The CDA would insulate Defendants from liability for false statements contained in profiles posted by third parties (see FAC ¶ 63); however, Plaintiffs' invasion of privacy claims do not rely on any third-party statements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

winks or false dates to the preferences of a particular member. The Privacy Policy states that "[i]f at any point [Match.com] decide[s] to use particular personally identifiable information in a manner different from that stated at the time it was collected, [it] will notify users by way of an email or by providing 30 days notice on the Site." (Id.)  Thus the Privacy Policy states that information cannot be used in a manner not listed unless proper notice is given.  Plaintiffs point to this provision in the FAC: "[Match.com] misrepresented to [Plaintiffs] that they would only use their personal information and emails to other subscribers in the manner set out in the Privacy Policy." (FAC ¶ 118.) This provision may serve as the basis for a negligent misrepresentation claim.

Plaintiffs next allege that Defendants made misrepresentations regarding dates between Match.com employees and customers, "knowing that these 'dates' would not lead to any type of meaningful relationship and was not a true 'match.'" (FAC ¶ 123.) However, Plaintiffs have not identified a single specific misstatement relating to a date between a Match.com employee and a member.

Plaintiffs then allege that Defendants made misrepresentations with regard to winks (id. ¶ 124); Defendants allegedly "concealed . . . that certain 'winks' sent to the subscriber immediately before or after their subscription expires is not from a legitimate possible match." (Id. ¶ 127.)  Concealment is not a basis for a negligent misrepresentation claim.  Furthermore, although Plaintiffs have identified a wink allegedly sent by Marzec to Plaintiff Evans, Plaintiffs have not pointed out any statement contained in that wink that Marzec was a Match.com member; instead, it appears that the problem with the wink was that it omitted to state that Marzec was a Match.com employee.

Finally, Plaintiffs allege that the Match.com Defendants failed to inform subscribers that their profiles would not be visible to other subscribers unless they were updated every thirty days.  (Id. ¶ 132.)  Plaintiffs have not pointed to any statement in the Privacy Policy, the Terms of Use Agreement, or elsewhere pertaining to the availability of member profiles for viewing.

Nevertheless, the Court finds that Plaintiffs have met the Rule 9(b) standard by alleging specific misrepresentations in the Privacy Policy.  Plaintiffs have also alleged the other elements of a negligent misrepresentation claim.  In particular, the FAC states that Defendants "had no reasonable ground for believing the truth of [their] representations in [the] Privacy Policy" (FAC ¶ 119), and that the Match.com Defendants "had intent to induce reliance from [Plaintiffs] with their misrepresentations regarding their use of [Plaintiffs'] personal information and emails, which [Plaintiffs] relied upon to their detriment" (FAC ¶ 120).  The Court therefore declines to dismiss this claim.

### E. Unfair Business Practices

The fifth claim for relief, brought by the California Plaintiffs only, alleges unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

business practices in violation of California Business and Professions Code §§ 17200-17210. The statute defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California Business and Professions Code §§ 17500-17594]." Cal. Bus. & Prof. Code § 17200. An action to enforce this provision may be brought "by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. The statute further provides that a private plaintiff "may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the [California] Code of Civil Procedure . . . ." Cal. Bus. & Prof. Code § 17203.

The Match.com Defendants do not appear to dispute that Plaintiffs have adequately alleged an unlawful, unfair or fraudulent business act or practice. Plaintiffs' fifth claim for relief relies once again on Defendants' use of false winks; use of date bait; review of subscribers' private communications to further the alleged scheme; and failure to disclose these practices. (FAC ¶ 139(1)-(7).) Such acts could constitute unfair or fraudulent business practices. They may also be unlawful under California Civil Code §§ 1709-1711, governing fraudulent deceit, and the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1784, as discussed below. (FAC ¶ 139(8)-(11).) Furthermore, as will be discussed in connection with Plaintiffs' sixth and seventh claims for relief, Plaintiffs have adequately alleged untrue or misleading advertising and violations of California Business and Professions Code §§ 17500-17594.

The Match.com Defendants instead argue that Plaintiffs do not have standing to sue because they have not alleged an injury in fact or causation. The statute requires a class action plaintiff to show that "(1) [he or] she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising." Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005). "A showing of causation is required as to each representative plaintiff." Id. (emphasis omitted). To show causation, Plaintiffs must "allege they actually relied on false or misleading advertisements." Id.

Plaintiffs allege that they subscribed to Match.com, or remained subscribers, as a result of Defendants' representations regarding the service. (FAC ¶¶ 100-101.) Contrary to Defendants' assertions, Plaintiffs do allege that they relied on the winks, false dates, and test of the Privacy Policy and Terms of Use Agreement. (Id. ¶¶ 58; 71, 100-101.) Plaintiffs also allege that they have suffered monetary damage because the service they paid for was different from what they expected to receive, and because they have been persuaded to renew their subscriptions by the unjustified hope that fraudulent winks and dates would lead to true relationships. (Id. ¶¶ 58, 135.) The Court finds that Plaintiffs have alleged actual injury and causation. Thus Plaintiffs have adequately pleaded a claim under California Business and Professions Code §§ 17200-17210.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

## F. Unfair and Deceptive Business Practices

The sixth claim for relief, brought by the California Plaintiffs only, alleges unfair and deceptive business practices in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784. The CLRA prohibits a number of specific acts constituting "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Plaintiffs focus on two such prohibited activities: "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and "[i]nserting an unconscionable provision in the contract," Cal. Civ. Code § 1770(a)(19). (FAC ¶ 159.) The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices." Cal. Civ. Code § 1760.

The Match.com Defendants first argue that the FAC does not allege any actual advertisement by Defendants. The FAC contains only a conclusory allegation that Defendants "advertised their online service without disclosing" the true terms of the service, including the use of false winks, the use of date bait teams, and the de facto requirement that subscribers update their profiles every 30 days. (FAC ¶ 159(1).) The FAC also mentions misrepresentations made through Defendants' "conduct, their online information and their advertisements." (Id. ¶ 158.) Although these allegations are conclusory and do not specify how Defendants allegedly advertised the Match.com service, Plaintiffs do point to two documents available on the Match.com website and describing the terms of the Match.com service: the Privacy Policy and the Terms of Use Agreement. The CLRA does not define the term "advertising," nor have the parties provided guidance as to how the Court should construe the term. Given the liberal construction mandated by the statute, the Court finds that the Privacy Policy and the Terms of Use Agreement could constitute advertising. Again, Plaintiffs may be able to demonstrate that the Privacy Policy and the Terms of Use Agreement misleadingly failed to disclose the wrongful activities in which Defendants engaged. Furthermore, Plaintiffs have alleged that Defendants acted "with intent not to sell [their services] as advertised." (FAC ¶ 159(1).)

Plaintiffs also allege that Defendants have inserted unconscionable provisions into their contract. (FAC ¶ 159(2).) Throughout most of the FAC, Plaintiffs argue that the Privacy Policy and the Terms of Use Agreement do not allow Defendants to engage in the conduct alleged by Plaintiffs. As the Court has noted, however, such conduct may arguably be permitted pursuant to the terms of these documents. If so, then Plaintiffs may be able to argue that the provisions allowing this conduct are unconscionable. Under California law, "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Cal. Civ. Code § 1670.5(b). Thus dismissal is inappropriate at this stage.

The Match.com Defendants next argue that Plaintiffs lack standing to bring a claim under the CLRA because they have not adequately alleged causation. The CLRA allows an action by "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780(a). "Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." Wilens v. TD Waterhouse Group, 120 Cal. App. 4th 746, 754 (2003) (citation omitted).

The Match.com Defendants' argument has no merit. Plaintiffs have alleged that they subscribed to Match.com, or remained subscribers, as a result of Defendants' misrepresentations regarding the service. (FAC ¶¶ 100-101.) Plaintiffs also allege that they have suffered damage because they have paid for a service different from what they expected to receive, and have been persuaded to renew their subscriptions. (FAC ¶ 135.)

The Court finds that Plaintiffs have adequately pleaded a claim under the CLRA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

## G. False Advertising

The seventh claim for relief, brought by the California Plaintiffs only, alleges false advertising in violation of California Business and Professions Code §§ 17500-17594. The statute provides:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent . . . to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . before the public in this state . . . in any . . . manner . . . , including over the Internet, any statement, concerning . . . those services . . . , which is untrue or misleading, and which is known . . . to be untrue or misleading
> . . . .

Cal. Bus. & Prof. Code § 17500. This provision prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Kasky v. Nike, Inc., 27 Cal. 4th 939, 951(2002), cert. dismissed, 539 U.S. 654 (2003) (alteration, citation, and internal quotation marks omitted). Injunctive relief is available for violations of this provision. Cal. Bus. & Prof. Code § 17535. An action for violations of California Business and Professions Code § 17500 may be brought under California Business and Professions Code § 17204 "by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§ 17200, 17204.

The Match.com Defendants argue that Plaintiffs have not alleged any facts showing that Defendants engaged in untrue or misleading advertising. However, as noted above in connection with Plaintiffs' CLRA claim, the Privacy Policy and the Terms of Use Agreement could themselves be construed as advertising. Plaintiffs have adequately alleged that these documents contained false or misleading statements.

In addition, as discussed above, Plaintiffs have satisfied the standing requirements of California Business and Professions Code §§ 17203-17204. Thus dismissal is inappropriate.

## H. Unlawful Competition

The eighth claim for relief, brought by the California Plaintiffs only, alleges Unlawful Competition in violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17000-17101. The Unfair Practices Act was intended "to discourage practices which injure the seller's competitors . . . and thereby tend to create . . . monopolies," and "to allow the seller to meet in good faith the prices of his competitors . . . , thereby fostering . . . competition." Harris v. Capitol Records Distrib. Corp., 64 Cal. 2d 454, 461 (1966). The Unfair Practices Act prohibits a number of specific anti-competitive behaviors, including locality discriminations, Cal. Bus. & Prof. Code §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

17040; sales below cost, Cal. Bus. & Prof. Code § 17043; the secret payment of rebates or unearned discounts, or the secret offering of privileges to certain purchasers, Cal. Bus. & Prof. Code § 17045; and the use of threats, intimidation, or boycotts, Cal. Bus. & Prof. Code § 17046. The Unfair Practices Act further provides that "[a]ny person or trade association may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages." Cal. Bus. & Prof. Code § 17070.

The Match.com Defendants persuasively argue that Plaintiffs have not alleged any anti-competitive conduct. Plaintiffs do not oppose dismissal. (Opp'n 15:19-23.) The Court therefore dismisses the eighth claim for relief pursuant to Rule 12(b)(6). Though the Motion was brought only by the Match.com Defendants, the Court exercises its discretion to dismiss the claim *sua sponte* against Defendant Marzec as well.

## I. Violation of California Civil Code §§ 1694-1694.4

The tenth claim for relief, brought by the California Plaintiffs only, alleges violation of California Civil Code §§ 1694-1694.4 (the "Dating Services Act" or "DSA").

> By its terms, the DSA applies to contracts:
> with any organization that offers dating, matrimonial, or social referral services by any of the following means:
> (a) An exchange of names, telephone numbers, addresses, and statistics.
> (b) A photograph or video selection process.
> (c) Personal introductions provided by the organization at its place of business.
> (d) A social environment provided by the organization intended primarily as an alternative to other singles' bars or club-type environments.

Cal. Civ. Code § 1694. The DSA provides that a contract for dating services is void and unenforceable in either of two situations: (1) if the contract was "entered into under willful and fraudulent or misleading information or advertisements of the seller," or (2) if the contract fails to comply with the provisions of the DSA. Cal. Civ. Code § 1694.4(a)-(b). Other provisions of the DSA state that a customer has a right to cancel a dating services contract within three business days upon written notice, Cal. Civ. Code § 1694.1; that the contract must be in writing and must advise the customer of the right to cancellation, Cal. Civ. Code § 1694.2; and that the contract must include certain other language advising customers of their rights in the event of death, disability, or relocation, Cal. Civ. Code § 1694.3.

The Match.com Defendants argue that Plaintiffs have not alleged any conduct constituting a violation of the Dating Services Act. However, Plaintiffs specifically allege that the contract, as embodied by the Privacy Policy and the Terms of Use Agreement, did not contain a notice of their cancellation rights as required by California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Civil Code § 1694.2. (FAC ¶ 205.) Plaintiffs further allege that Defendants made willful and fraudulent statements, through winks, false dates, and the Privacy Policy and Terms of Use Agreement. (Id. ¶ 207.) These statements allegedly induced Plaintiffs to subscribe, and to remain subscribed, to Match.com. Such conduct could constitute a violation of California Civil Code § 1694.4(a).

The Match.com Defendants next argue that the Dating Services Act does not apply to their business. The Match.com Defendants concede that the Match.com service may display photographs of members. However, they contend that because the site's search feature does not allow searches based on photographs alone, but only based on descriptive text, the service does not offer a "photograph . . . selection process" within the meaning of the statute. Even accepting these factual contentions, a feature that permits users to view photographs of prospective matches before contacting them could readily be construed as a "photograph . . . selection process." Whether Defendants are covered by this provision could depend on such facts as the timing and frequency with which photographs may be used, or the number of photographs available. Defendants may also fall within one of the other subsections of this provision. For instance, the Match.com site could be found to constitute a "social environment." Plaintiffs may be able to prove facts demonstrating that Defendants are covered by the DSA.

The Match.com Defendants urge the Court to consult the legislative history of the Dating Services Act. However, as the Match.com Defendants themselves note, the Court must apply the plain meaning of the terms of a statute; resort to legislative history is improper when the terms of a statute are unambiguous. Berry v. State, 2 Cal. App. 4th 688, 691 (1992).

The Match.com Defendants also argue that a reading of the DSA that encompasses online dating services could lead to absurd results. The Match.com Defendants point out the following difficulties: (1) the relocation provisions required by California Civil Code § 1694.3(b) would have no meaning in the context of online dating; (2) the disability provision is less likely to be relevant to the online customer because many disabled customers would not be prevented from using the service; (3) the statute, read literally, does not permit a customer to give notice via e-mail, Cal. Civ. Code § 1694.1(b); (4) an online service cannot control such aspects as the font size or the pagination of the contract, as required by a literal reading of California Civil Code §§ 1694.2(b) and 1694.2(c); and (5) a contract provided only online may not be considered a contract "in writing" and "provided to the buyer," Cal. Civ. Code § 1694.2(a).

These arguments lack merit. The Match.com Defendants themselves point out that the DSA was enacted in 1989, when internet use was far less widespread. It is therefore not surprising that the provisions of the DSA are not precisely tailored to the online context. The Motion identifies no reason why these provisions of the DSA could not be applied literally, for instance requiring even an online dating service to provide a written

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

contract complying with the statutory requirements. Even if practicality suggests that the requirements of the DSA should be relaxed for online dating services, these considerations do not give the Court license to exempt online dating services altogether, so long as these services are otherwise covered under the terms of the DSA.

Finally, the Match.com Defendants argue that Plaintiffs have not alleged any damages suffered as a result of violations of the DSA. Though Plaintiffs have not alleged damages from the failure to include cancellation provisions in the contract, they have alleged damages resulting from the allegedly fraudulent conduct that induced them to become or remain subscribers, as has already been discussed.

The Court denies the Motion as to the DSA claim.

## J. **Breach of Contract**

Plaintiffs' eleventh claim for relief alleges breach of contract. The elements of a breach of contract claim are "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001) (citation omitted). "When a dispute arises over the meaning of contract language, the court must decide whether the language is 'reasonably susceptible' to the interpretations urged by the parties." Badie v. Bank of Am., 67 Cal. App. 4th 779, 798 (1998) (citations omitted). Where more than one interpretation is possible, the contract is ambiguous, id.; the court may then consider extrinsic evidence to clarify the ambiguity. Moss Dev. Co. v. Geary, 41 Cal. App. 3d 1, 9 (1974).

Plaintiffs allege that the Privacy Policy and the Terms of Use Agreement together constitute a contract between Plaintiffs and Match.com. (FAC ¶ 212.)[7] Plaintiffs further allege that each of them complied with the Terms of Use Agreement; that each was subjected to breaches of contract; and that each was damaged in the amount of his or her membership fees. (FAC ¶ 218.) The Match.com Defendants do not dispute these allegations.

The eleventh claim for relief does not specifically detail what actions constituted the breach. However, the remainder of the FAC suggests five types of conduct allegedly in breach of the contract: (1) the sending of false winks from Match.com employees to subscribers whose subscriptions are about to end (id. ¶ 57); (2) the use of date bait and the reviewing of subscribers' personal information to make the Match.com employee

---

[7] The Terms of Use Agreement states: "This Agreement sets out the legally binding terms of your use of the Website and your membership in the Service . . . . This Agreement includes Match.com's Acceptable Use Policy for Content Posted on the Website, Match.com's Privacy Policy, and any notices regarding the Website." (FAC Ex. B.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

going on the date seem like a perfect match (id. ¶¶ 68-69); (3) the monitoring and restricting of subscribers' e-mails to other members (id. ¶ 59); (4) the alleged failure to protect subscribers from identified predators and scam artists who post profiles that Match.com knows to be false or fraudulent (id. ¶¶ 62-63), and possibly the posting of false profiles by Defendants themselves (id. ¶ 86(2)); and (5) failure to include a subscriber's profile information in Match.com's "matching technology" system unless the profile is updated every thirty days (id. ¶ 75).

As has already been discussed, the use of false winks and the use of members' personal information for purposes of date bait is arguably prohibited by the Privacy Policy. This conclusion is consistent with the purposes for the contract. According to Plaintiffs, members join Match.com so that they "can search the database for someone who interests them." (FAC ¶ 50.) Plaintiffs allege that many, if not most, subscribers are "looking for a long-term relationship." (Id. ¶ 71.) Given the reasons why subscribers join Match.com, it is unlikely that a subscriber would agree to a contract that allowed Match.com employees to send fake winks and go on dates with no intention of pursuing a relationship with the targeted subscriber. Plaintiffs' allegations of false winks and date bait may therefore be sufficient to support a breach of contract claim.

As for the monitoring and limiting of e-mails between subscribers, the Privacy Policy expressly states that Match.com "may review all demographic information," which includes non-public information such as "one-on-one communications" between users. (FAC Ex. A.) The Terms of Use Agreement provides that members may "communicate with other Members." (FAC Ex. B.) The Terms of Use Agreement also provides: "In order to protect our Members from . . . advertising or solicitation, Match.com reserves the right to restrict the number of emails which a Member may send to other Members in any 24-hour period to a number which Match.com deems appropriate in its sole discretion." (Id. ¶ 5(g).) Thus Plaintiffs' allegations that Match.com monitored and limited their e-mails cannot constitute a breach of contract.

Plaintiffs next allege that Defendants failed to protect them from third parties who post profiles that Defendants know to be false or fraudulent. However, the Terms of Use Agreement specifically states that "Match.com is not responsible for any incorrect or inaccurate Content posted on the Website in connection with the Service . . . ." (Id. ¶ 10.) The Terms of Use Agreement does state that each member is prohibited from posting content that the member knows to be false or misleading. (Id. ¶ 5(d).) Furthermore, "Match.com may review and delete any content . . . that in the sole judgment of Match.com violate this Agreement or which might be offensive, illegal, or that might violate the rights, harm, or threaten the safety of Members." (Id. ¶ 5(a).) The Terms of Use Agreement does not, however, state that Match.com must do so. Again, these allegations cannot constitute a breach of contract because the contract simply does not require Match.com to protect its users from known false or fraudulent profiles posted by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

third parties.

Elsewhere in the complaint, Plaintiffs also suggest that Defendants themselves created and maintained the false profiles. Again, nothing in the contract seems to preclude Defendants from doing so, even if such conduct might be actionable under other legal theories.

Finally, Plaintiffs allege that Defendants required members to update profiles every thirty days, or risk not having their profiles seen by other members. As noted above, Plaintiffs have not pointed to any statement in the Privacy Policy or the Terms of Use Agreement, or elsewhere pertaining to the availability of member profiles for viewing. This allegation therefore cannot serve as the basis for a breach of contract claim.

Nevertheless, because Plaintiffs may be able to prove a breach of contract claim based on the fake winks and date bait allegations alone, the Court will not dismiss the breach of contract claim.

## K. Declaratory Relief

Finally, the Match.com Defendants seek to dismiss Plaintiffs' twelfth claim for relief, which seeks declaratory relief under 28 U.S.C. § 2201. (Mot. 25:4-9.) This claim alleges that an actual controversy exists as to matters including "responsibilities in connection with the sale of [Defendants'] business." (FAC ¶ 221.) This allegation appears to have little relation to the case presently before the Court. Plaintiffs do not discuss this claim in their Opposition. The Court therefore dismisses the twelfth claim for relief.

## VI. CONCLUSION

For the reasons discussed above, the Court GRANTS the Motion in part and DENIES it in part. Plaintiffs' first claim for relief for violation of RICO, 18 U.S.C. § 1964(c), is dismissed without prejudice as to Defendants IAC and Marzec only. Plaintiffs' third claim for relief for invasion of privacy is dismissed without prejudice only to the extent it relies on California Civil Code §§ 1798.80-1798.84 or on common law. Plaintiffs' eighth claim for relief for violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17000-17101, is dismissed without prejudice as to all Defendants.
Plaintiffs' twelfth claim for relief seeking declaratory relief under 28 U.S.C. § 2201 is dismissed without prejudice.

Plaintiffs are granted leave to amend the complaint in conformity with this Order. An amended complaint may be filed and served no later than June 26, 2006. Failure to file an amended complaint by that date will waive Plaintiffs' right to do so. If Plaintiffs fail to file an amended complaint by that date, Defendants must answer the complaint

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

within twenty days after that date.

Initials of
Preparer:

