

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

APR 2 5 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

5A

MATTHEW EVANS, et al.,

    Plaintiffs,

    v.

IAC/INTERACTIVE CORP., a
Delaware corporation, et al.,

    Defendants.

CASE NO. CV 05-1104 DSF (CWx)

ORDER DENYING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION

ENTERED
CLERK, U.S. DISTRICT COURT

APR 27 2007

CENTRAL DISTRICT OF CALIFORNIA
B.                          DEPUTY

## I. INTRODUCTION

Match.com is an online dating service. Plaintiffs allege that since November 10, 2001, Defendants IAC/Interactive Corp. ("IAC"), Ticketmaster, Match.com, L.P. (collectively the "Match.com Defendants"), and Autumn Marzec have engaged in a fraudulent scheme to induce potential customers to subscribe, and later re-subscribe, to Match.com's dating services. Plaintiffs assert claims for (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (2) fraud and deceit; (3) invasion of privacy; (4) negligent misrepresentation; (5) unfair business practices in violation of California Business and Professions Code §§ 17200-17210, by Plaintiffs Krista

1   Bauer, Addie Boudreau, Matthew Evans, David Harzberg, and Randy Snyder (the
2   "California Plaintiffs") only; (6) unfair and deceptive business practices in
3   violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§
4   1750-1784, by the California Plaintiffs only; (7) false advertising in violation of
5   California Business and Professions Code §§ 17500-17594, by the California
6   Plaintiffs only; (8) breach of the implied covenant of good faith and fair dealing;
7   (9) violation of California Civil Code §§ 1694-1694.4, by the California Plaintiffs
8   only; and (10) breach of contract.

9          Plaintiffs seek to certify three plaintiff classes: the purported National Class
10   consists of all current and former subscribers to Match.com (First Amended
11   Complaint ("FAC") ¶ 34); the California Class consists of all individuals in the
12   National Class who were California residents when they subscribed to Match.com
13   (FAC ¶ 35); and the Senior Citizen Subclass consists of all individuals in the
14   California Class who were "senior citizens," as that term is used in California
15   Civil Code §§ 1761 and 3345, at the time of subscription (FAC ¶ 36).

16          Having considered the papers submitted by the parties and having heard the
17   oral argument of counsel, the Court DENIES the Motion.

18                              **II. EVIDENTIARY ISSUES**

19          Defendants first object[1] to Plaintiffs' declarations on grounds that the
20   declarations are contradicted by Plaintiffs' deposition testimony.  A comparison of
21   the declarations with the deposition testimony reveals numerous and substantial
22   discrepancies.  In one notable example, Plaintiff Evans admitted that he had *no*
23   *knowledge* of certain information contained in his declaration.  (Defendants'
24   Evidentiary Objections to Plaintiffs' Declarations ("Objections") Ex. E at 31.)  As

25

---

26   [1] Defendants also object to certain portions of the declarations on hearsay and
27   foundational grounds.  The Court declines to address these objections because they
     relate to portions of the declarations that the Court has not considered in its analysis or
28   has stricken on other grounds.

1  discussed at length below, these discrepancies support the Court's conclusion that

2  Plaintiffs do not satisfy the adequate representation requirements for class

3  certification. Nevertheless, the Court declines to strike the declarations. Instead,

4  where the declarations are expressly contradicted by deposition testimony without

5  explanation, the deposition testimony will control.

6       Defendants also seek to strike the Declarations of Krista Dietz, Don Kos,

7  Andy Norman, Rafael Pardo, and William H. Pritchett Sr. in their entirety. On

8  November 20, 2006, Plaintiffs filed this Motion for Class Certification, submitting

9  declarations from the putative class representatives, as well as the declarations of

10  Carol Cormier, Charles Dundee, Krista Dietz, Don Kos, Andy Norman, Rafael

11  Pardo, and William H. Pritchett Sr. (the "New Declarants"). Plaintiffs, however,

12  failed properly to disclose to Defendants the identities of the New Declarants.

13  Consequently, on December 6, 2006, the Court ordered Plaintiffs to produce each

14  of the New Declarants for deposition by December 19, 2006. (Order on

15  Defendants' Ex Parte Application to Strike Declarations of New Declarants, etc.

16  ("Dec. 6, 2006 Order") at 1.) The Court warned Plaintiffs that it would strike the

17  declaration of any New Declarant who was not produced for deposition. (Id. at 2.)

18  Plaintiffs failed to heed the Court's warning, and produced only Cormier and

19  Dundee for deposition before the December 19 deadline. (Pines Decl. ¶¶ 19-21.)

20  The Court therefore strikes the declarations of Dietz, Kos, Norman, Pardo, and

21  Pritchett Sr.

22       Finally, Defendants object to portions of Plaintiffs' declarations because the

23  subject testimony is not relevant to any issue alleged in the FAC and constitutes a

24  belated and improper attempt by Plaintiffs to amend their class claims. On March

25  14, 2007, the Court issued an Order to Show Cause Re Leave to Amend First

26  Amended Complaint ("March 14 Order") to address the Plaintiffs' mutable class

27  claims. The Court noted that Plaintiffs had repeatedly reformulated the theories

28  underlying their class claims in the class certification briefings, at the January 29,

1  2007 class certification hearing, and in their February 8, 2007 supplemental

2  statement, but had failed to amend the FAC to state these new theories (the "New

3  Theories"). (March 14 Order 2-3.)  Because the scheduling order deadline for

4  making such amendments had long since passed, the Court elected to treat

5  Plaintiffs' supplemental statement as a de facto motion for leave to amend (id. at

6  4) and ordered Plaintiffs to show cause why they should be granted leave to

7  amend. (Id. at 5).  Plaintiffs were required to show that they had diligently

8  asserted the New Theories. (Id. at 4-5.)  Plaintiffs, however, failed to identify

9  information that was justifiably late-obtained, to demonstrate how any such

10 information supported the New Theories, or to adduce *any* evidence demonstrating

11 that they diligently asserted the New Theories. (April 19, 2007 Order Denying

12 Plaintiffs Leave to Amend First Amended Complaint ("April 19 Order") 3.)  The

13 Court found no "good cause" for modifying the scheduling order (id.) and

14 Plaintiffs were denied leave to amend. (Id.)  Consequently, the Court now

15 declines to consider any evidence or argument related to the New Theories.

## III. __FACTUAL BACKGROUND__

17     The Court accepts the following facts as true for purposes of this Motion

18 only.

### A.  __The Parties__

20     Match.com is an online dating service with over 15 million members and at

21 least 1 million paying subscribers.  (FAC ¶¶ 8, 23.)  Plaintiffs allege that

22 Defendant IAC is the owner of Match.com (id. ¶ 21), Defendant Match.com, L.P.

23 is an operating business of IAC (id. ¶ 23), and Defendant Ticketmaster is the

24 general partner of Match.com, L.P. (id. ¶ 22).  Defendant Marzec is an individual

25 allegedly providing services to Match.com. (Id. ¶ 26.)  Plaintiffs Bauer, Boudreau,

26 Evans, Harzberg, and Snyder are subscribers to the Match.com service; they bring

27 this action individually and as representatives of all persons similarly situated.

28 (Id. ¶¶ 11-19.)

### B. Match.com's Services

Paying subscribers to Match.com receive certain benefits that members do not, including the ability to respond to emails from members and participate in "conversations" with other members. (Id. ¶ 8.) New subscribers may select from three options: a one-month trial for $29.99 per month, a three-month trial for $16.99 per month, or a six-month trial for $12.99 per month. (Id. ¶ 49.) Unless the subscriber resigns during the trial period, the membership is automatically renewed for the same duration and the subscriber is billed. (Id.) A new subscriber fills out a profile of personal information to be viewed by other members. (Id. ¶ 50.) Members can search the database and can email or send "winks" to persons they find interesting. (Id.) A "wink" is a pre-scripted message that one member can send to another to express interest. (Opp'n 4.) Match.com also matches subscribers to other members by selecting people who meet a subscriber's criteria. (Id. ¶ 50.) Match.com has a written Privacy Policy explaining how the service uses members' personal information. (Id. ¶ 51, Ex. A.) Match.com also has a written Terms of Use Agreement. (Id. ¶ 54, Ex. B.)

### C. The Match.com Defendants' Alleged Misconduct

Plaintiffs allege that Defendants engage in several forms of misconduct not disclosed in either the Privacy Policy or the Terms of Use Agreement. Plaintiffs focus on four categories of misconduct in their Motion. First, Match.com intentionally obfuscates the distinction between members and subscribers when soliciting new subscribers. (Appendix, Ex. 1 ¶ 10.) This distinction is significant because only subscribers are able to interact with other subscribers, and send "winks" and emails to both members and subscribers. (Id. ¶¶ 8, 10.) Subscribers,

1  however, are unable to ascertain whether the individual they are attempting to
2  contact is a subscriber who is able to respond, or a member who is not.  (Id. ¶ 13.)[2]
3      Second, Match.com sends "winks" to customers whose subscriptions are
4  about to end or who have acted to prevent automatic renewal; these winks appear
5  to be from other interested members, but in fact are generated by a Match.com
6  employee or a computer program.  (FAC ¶¶ 42, 57.)  The Match.com agent
7  communicates with the customer online using pre-scripted language.  (Id. ¶ 58.)
8  The goal is to retain subscribers by fostering the belief that they will meet a
9  prospective match.  (Id.)
10      Third, Match.com fails to protect members and subscribers from identified
11  predators and scam artists who post profiles that Match.com knows to be false or
12  fraudulent.  (Id. ¶¶ 62-63.)  Although Match.com has received complaints about
13  such profiles, and could detect and remove them or warn subscribers of their
14  presence, it fails to do so because it seeks to maximize the claimed size of its
15  member and subscriber bases.  (Id. ¶¶ 63-64.)
16      Fourth, Match.com uses what Plaintiffs term "date bait."  Match.com hires
17  agents to contact subscribers with "winks," and in some cases to go on dates to
18  encourage customer retention and word-of-mouth advertising.  (Id. ¶ 68.)  These
19  agents read subscribers' emails to other members, then use the information they
20  gather to make themselves appear to be perfect matches for those subscribers.  (Id.
21  ¶ 69.)  These agents allegedly include Defendant Marzec.  (Id. ¶ 68.)  In their
22  Reply, Plaintiffs admit that this is an individual claim, rather than a class claim.
23  (Reply 4:28.)
24
25
26

_____

27  [2]  A member can respond by becoming a subscriber.  (Declaration of Walter M. Presz in
28  Opposition to Plaintiffs' Motion for Class Certification ¶ 14.)

## D. **The Putative Class Representatives**[3]

Plaintiff Bauer of Oakland, California became a Match.com member in 2000, and became a paid subscriber in 2005. Bauer noticed that she would consistently receive more winks per week at the end of her subscription period. (Appendix, Ex. 4 ¶ 14.) She also encountered numerous profiles on Match.com that "seemed to be operated by a scam artist or other imposter representing themselves as genuine daters." (Id. ¶ 15.) Bauer seeks to be certified as a representative of the California Class. (Id. ¶ 4.)

Plaintiff Boudreau of Banning, California is seventy-three years of age. (Appendix, Ex. 5 ¶ 5.) Boudreau purchased a subscription to Match.com in August 2005. (Id. ¶¶ 8-9.) She noticed that she would consistently receive more "winks" per week at the end of her subscription period. (Id. ¶ 15.) Boudreau also encountered numerous allegedly fake profiles on Match.com. (Id. ¶ 16.) She now seeks to be certified as a representative of the Senior Citizen Subclass. (Id. ¶ 4.)

Plaintiff Evans of Costa Mesa, California subscribed to Match.com in July 2002. (Objections, Ex. E at 32.) In January 2005, Evans was contacted by Marzec with a "wink," and later went on two dates with Marzec. (Appendix, Ex.1 ¶¶ 14-15.) Marzec allegedly told Evans that she was employed by Match.com (id. ¶ 15), and that her job duties included sending out "winks," exchanging emails, and going out on dates with Match.com subscribers in order to retain subscribers and increase new subscriptions (id. ¶ 15). On March 2, 2005, Evans used his Match.com account to email other Match.com subscribers about Marzec's

---

[3] Although only five class representatives are discussed here, the FAC identifies three additional class representatives: Steve Uman, Ron Oakes, and Laura Tarleton. (FAC ¶¶ 12, 14-15.) None of these Plaintiffs has been dismissed from the action, but they have not responded to Defendants' discovery requests and have not submitted declarations in connection with this Motion. (Pines Decl. ¶¶ 11-18.) These individuals are not referenced in the Motion, and the Court declines to consider them as potential class representatives.

disclosures. (Id. ¶ 17.) Evans did not send these emails to Marzec. (Id. ¶ 18.) Later that same day, Marzec contacted Evans to discuss the contents of those emails. (Id. ¶ 18.) Shortly thereafter, Evans cancelled his Match.com subscription. (Id. ¶ 19.) During the on-line cancellation process, Evans was subjected to numerous "pop-up" screens with pictures of women stating that they had viewed his profile and were possible matches. (Id. ¶ 19.) Evans alleges that this was a ploy by Match.com to discourage him from cancelling his subscription (id.), and seeks to be certified as a representative of both the National Class and the California Class. (Id. ¶¶ 4-5.)

Plaintiff Harzberg of Spicewood, Texas subscribed to Match.com in August 2003. (Appendix, Ex. 2 ¶ 2, 6.) While he was a subscriber, Harzberg regularly received emails from Match.com containing photographs and accompanying profiles of various women who might be suitable matches. (Id. ¶ 8.) Although the emails contained different profiles, many of the photos attached to these profiles were identical. (Id. ¶¶ 8-9.) Harzberg suspected that the profiles were fraudulent, and sent Match.com an email detailing his suspicions. (Id. ¶ 9.) In response, Match.com sent Harzberg an email indicating that it was aware of the issue. (Id.) Despite his complaint, Harzberg continued to receive emails from Match.com containing fraudulent profiles. (Id. ¶ 10.) Harzberg again contacted Match.com to complain about the problem, and eventually spoke to a customer agent about obtaining a refund. (Id. ¶ 11.) Harzberg's request for a refund was ultimately denied (id. ¶ 12), and he subsequently terminated his Match.com subscription in October 2006. (Id. ¶ 6.) He now seeks to be certified as a representative of the National Class. (Id. ¶ 4.)

Plaintiff Snyder of Calabasas, California subscribed to Love@AOL at some time between 2000 and 2003. (Appendix, Ex. 3 ¶¶ 2, 5.) Love@AOL was a website offering services similar to those offered by Match.com. (Id. ¶ 5.) While

1    Snyder was a subscriber, Love@AOL and Match.com merged.  (Id. ¶ 8.)  As a

2    result of the merger, Snyder became a Match.com subscriber.  (Id. ¶ 9.)  However,

3    Snyder never posted a profile on Match.com (id. ¶ 11), and he never received any

4    "winks" or emails while he was a subscriber (id. ¶ 18).  Immediately after Snyder's

5    Match.com subscription expired, he began receiving electronic communications

6    from Match.com stating that Match.com members were interested in contacting

7    him.  (Id. ¶ 18.)  Snyder now seeks to be certified as a representative of the

8    California Class.  (Id. ¶ 4.)

9                            **IV.  LEGAL STANDARD**

10            Before certifying a class, the trial court must conduct a "rigorous analysis"

11    to determine whether the party seeking certification has met the prerequisites of

12    Rule 23 of the Federal Rules of Civil Procedure.  Valentino v. Carter-Wallace,

13    Inc., 97 F.3d 1227, 1233 (9th Cir. 1996).  The party seeking certification must

14    satisfy all requirements of Rule 23(a), id. at 1234, which are:

15                (1) the class is so numerous that joinder of all members is

16                impracticable, (2) there are questions of law or fact common to the

17                class, (3) the claims or defenses of the representatives are typical of

18                the claims or defenses of the class, and (4) the representative parties

19                will fairly and adequately protect the interests of all members of the

20                class.

21            Next plaintiffs must show that they satisfy one of the three provisions of

22    Rule 23(b).  Valentino, 97 F.3d at 1233.  A class may be certified under Rule

23    23(b)(1) if the prosecution of separate actions would create a risk of inconsistent

24    judgments.  Rule 23(b)(2) certifications are appropriate where the party opposing

25    the class has acted or refused to act on grounds generally applicable to the class,

26    justifying injunctive or declaratory relief.  A class may be certified under Rule

27

28

                                        9

1  23(b)(3) where questions of law or fact common to members of the class

2  predominate and a class action is superior to other available methods.

3      Rule 23(c)(1) directs the court to determine "at an early practicable time"[4]

4  whether to certify an action as a class action.  At this stage of the proceedings, the

5  Court must accept the factual allegations in the complaint as true.  <u>Blackie v.</u>

6  <u>Barrack</u>, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  However, because "the class

7  determination generally involves considerations that are enmeshed in the factual

8  and legal issues comprising the plaintiff's cause of action," a court must often look

9  behind the pleadings "to evaluate carefully the legitimacy of the named plaintiff's

10 plea that he is a proper class representative under Rule 23(a)." <u>Gen. Tel. Co. of</u>

11 <u>the Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982) (citations and internal quotation

12 marks omitted); <u>see also</u> <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>,

13 259 F.3d 154, 168 (3d Cir. 2001) ("In reviewing a motion for class certification, a

14 preliminary inquiry into the merits is sometimes necessary to determine whether

15 the alleged claims can be properly resolved as a class action.").  The proponent of

16 the class bears the burden of demonstrating that class certification is appropriate.

17 <u>In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.</u>, 693 F.2d 847, 854 (9th Cir.

18 1982) (citation omitted).

19              **V. <u>ANALYSIS</u>**

20      Plaintiffs must first show that the four prerequisites of Rule 23(a) –

21 numerosity, commonality, typicality, and adequacy of representation – are met.

22

23 ──────────────────

24 [4] In 2003 this language was adopted to replace the former guideline: "as soon as
   practicable after commencement of an action." Fed. R. Civ. P. 23(c)(1)(A), Advisory
25 Committee Notes, 2003 Amendments.  This change reflects the view that additional
   time may be required to conduct discovery.  "A critical need is to determine how the
26 case will be tried.  An increasing number of courts require a party requesting class
   certification to present a 'trial plan' that describes the issues likely to be presented at
27 trial and tests whether they are susceptible of class-wide proof." <u>Id.</u>
28

## A. **Numerosity**

"To satisfy [Rule 23(a)(1)'s] requirements, the proponent must first establish that a class does in fact exist." O'Connor v. Boeing N. Am., Inc., 180 F.R.D. 359, 367 (C.D. Cal. 1997). "A class definition should be precise, objective, and presently ascertainable." Id. (internal quotations omitted); see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiffs must first define an ascertainable and identifiable class.").

Plaintiffs propose the following class definitions:

(1)   National Class:

> All residents of the United States of America who subscribed to the Match.com service at any time between November 10, 2001 and _____ [the date on which the court certifies the National Class], excluding any persons who are directors, officers and/or employees of Defendants Match.com L.P. and/or Ticketmaster Inc. and/or their affiliates, and the immediate family members thereof, as well as all attorneys for the National Class and any employees of the attorneys or their firms;

(2)   California Class:

> All residents of the State of California who subscribed to the Match.com service at any time between November 10, 2001 and _____ [the date on which the court certifies the California Class], excluding any persons who are directors, officers and/or employees of Defendants IAC/Interactive Corp., Match.com L.P. and/or Ticketmaster Inc. and/or their affiliates, and the immediate family members thereof, as well as all attorneys for the California Class and any employees of the attorneys or their firms; and

(3)   Senior Citizen Subclass:

> All residents of the State of California who subscribed to the Match.com service and who were "senior citizens," as that term is used in *California Civil Code* section 3345 and as defined by the Consumer Legal Remedies Act, *California Civil Code* section 1761, when they subscribed to the Match.com service at any time between November 10, 2001 and _____ [the date on which the court certifies the Senior Citizen Subclass], excluding any persons who are directors, officers and/or employees of Defendants IAC/Interactive Corp., Match.com L.P. and/or

1                      Ticketmaster Inc. and/or their affiliates, and the immediate
family members thereof, as well as all attorneys for the

2                      Senior Citizen Subclass and any employees of the attorneys
or their firms.

3

(Mot. 3-4.)

4        Plaintiffs' proposed class definitions are sufficiently "precise and

5  ascertainable" because they set forth objective criteria that may be used to

6  ascertain class membership.  Defendants do not suggest otherwise.

7        "Next, the party seeking certification must demonstrate that the size of the

8  class defined makes joinder impracticable." O'Connor, 180 F.R.D. at 367.  In

9  determining whether joinder would be impracticable, a court may also consider

10  "the nature of the action, the size of the individual claims, [and] the inconvenience

11  of trying individual suits." Wang v. Chinese Daily News, 231 F.R.D. 602, 606

12  (C.D. Cal. 2005) (citing Jordan v. County of Los Angeles, 669 F.2d 1311, 1319

13  (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982)).  Although the

14  number of class members is not necessarily the deciding factor, "where a class is

15  large in numbers, joinder will usually be impracticable." Jordan, 669 F.2d at

16  1319.

17        Here the first proposed class is national in character.  Plaintiffs have not

18  determined the number of members of each of the proposed classes, but they have

19  indicated that the number could reach hundreds of thousands, if not millions.

20  (Mot. 7-8.)  Defendants admit that Match.com has millions of subscribers annually

21  (Answer ¶ 8), and the proposed National Class is comprised of all Match.com

22  subscribers over a five-year period.  The two California subclasses are likely to be

23  sufficiently numerous for similar reasons.  The proposed classes will therefore be

24  so numerous as to render joinder of all members impracticable.  Defendants

25  dispute this conclusion, but raise arguments that erroneously address either the

26  merits of the case or the commonality and typicality requirements.  The Court

27  finds that the numerosity requirement of Rule 23(a)(1) is met.

28

### B. <u>Commonality</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule "has been construed permissively," and its requirements "are less rigorous than the companion requirements of Rule 23(b)(3)." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Id.</u>; <u>see also</u> <u>Perry v. U.S. Bank</u>, No. C-00-1799-PJH, 2001 WL 34920473, at *4 (N.D. Cal. Oct. 17, 2001) (finding that Rule 23(a)(2) was satisfied but Rule 23(b)(3) was not).

Plaintiffs have identified several common issues of fact and law, including: (1) whether Defendants failed to disclose to subscribers that Match.com issues fake "winks" in order to trick members and subscribers into purchasing or renewing memberships and subscriptions; (2) whether Defendants failed to disclose to subscribers that individuals performing services for Match.com directly, or through an intermediary, pretend to be regular subscribers in order to trick subscribers into renewing their memberships; (3) whether Defendants failed to disclose to subscribers that Match.com employees read email communications between subscribers in order to facilitate Defendants' allegedly fraudulent scheme; (4) whether Defendants' conduct is "unlawful," "unfair," or "fraudulent" within the meaning of California Business & Professions Code § 17200-17210; and (5) whether Defendants engaged in an overarching scheme to defraud using wire communications in violation of RICO. Although the factual basis for each class member's claims will vary based on the class member's individual experiences, at least some of the legal issues and some of the factual questions are the same. "The

1   existence of shared legal issues with divergent factual predicates is sufficient" to

2   satisfy the commonality requirement.  Hanlon, 150 F.3d at 1019.

3        The Court finds that Plaintiffs have satisfied the commonality requirement

4   of Rule 23(a)(2).

5   **C. Typicality**

6        Rule 23(a)(3) requires that the representative parties' claims be "typical of

7   the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  The rule sets forth a

8   "permissive standard[]": under Rule 23(a)(3), "representative claims are 'typical'

9   if they are reasonably co-extensive with those of absent class members; they need

10  not be substantially identical." Hanlon, 150 F.3d at 1020.  Rule 23 "does not

11  require the named plaintiffs to be identically situated with all other class members.

12  It is enough if their situations share a common issue of law or fact and are

13  sufficiently parallel to insure a vigorous and full presentation of all claims for

14  relief." Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171,

15  1175 (9th Cir. 1990).  "Typicality refers to the nature of the claim or defense of the

16  class representative, and not to the specific facts from which it arose . . . ." Hanon

17  v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation

18  marks omitted).  "The test of typicality is whether other members have the same or

19  similar injury, whether the action is based on conduct which is not unique to the

20  named plaintiffs, and whether other class members have been injured by the same

21  course of conduct." Id. (internal quotation marks omitted).  In practice, "[t]he

22  commonality and typicality requirements of Rule 23(a) tend to merge." Gen. Tel.

23  Co. of the Sw., 457 U.S. at 157 n.13.

24       The claims of named Plaintiffs Bauer, Boudreau, Harzberg, and Snyder

25  may be "reasonably co-extensive with those of absent class members." Hanlon,

26  150 F.3d at 1020.  Each named Plaintiff alleges that he or she was sent fraudulent

27  "winks" and profiles to encourage them to remain as subscribers, which are

28

1  precisely the injuries alleged by the unnamed class members.  The action is not
2  based on conduct unique to the named Plaintiffs: the factual allegations
3  undergirding each cause of action focus on Defendants' conduct vis-a-vis all
4  Match.com subscribers, and do not focus predominantly on conduct unique to the
5  named Plaintiffs.  Finally, all putative class members have allegedly been injured
6  by a common course of conduct – Defendants' policy of sending false "winks" and
7  countenancing fraudulent profiles.[5]

8      Matthew Evans' claims, however, are unique to him.  Evans' primary claim
9  is that he was a victim of Defendants' "date bait" scheme: he exchanged emails
10 and went out on dates with Marzec, who allegedly was a Match.com employee.
11 Plaintiffs have adduced no evidence that other Match.com subscribers have
12 experienced "date bait."  Similarly, Evans' claim that Marzec accessed his email
13 account is idiosyncratic.  The other declarations submitted by Plaintiffs do not
14 even hint at a similar experience.  Additionally, Defendants have submitted
15 evidence that Marzec has never been employed by Match.com (Marzec Decl. ¶¶ 9-
16 12; Black Decl. ¶ 5), which raises the specter that Evans' claims might be subject
17 to a unique defense.  See Hanon, 976 F.2d at 508 ("[A] named plaintiff's motion
18 for class certification should not be granted if there is a danger that the absent
19 class members will suffer if their representative is preoccupied with defenses
20 unique to it.") (internal quotation marks omitted).  Evans therefore does not satisfy

21

22

23

24

---

[5] The Court notes an issue of concern with respect to these named Plaintiffs.  Each of them admittedly is ignorant of Match.Com's FAQs, Terms of Use, and Privacy Policy. (See Objections Exs. A at 4-5, B at 10, E at 33, F at 39, G at 43.)  On the one hand, if their ignorance is typical of the unnamed class members then, as discussed in Section V.D below, Plaintiffs will have difficulty proving reliance for their RICO, fraud, and negligent misrepresentation claims.  On the other hand, if their ignorance is atypical of the unnamed class members, then these named Plaintiffs are unsuited to be class representatives.

25

26

27

28

1  the typicality requirement because his particularized claims do not apply to the

2  unnamed class members.

3      The Court finds that only putative class representatives Bauer, Boudreau,

4  Harzberg, and Snyder arguably have claims that are sufficiently typical of the class

5  claims to satisfy Rule 23(a)(3).  The Court need not reach a definitive conclusion

6  on this issue for the reasons addressed next.

7  **D. <u>Adequate Representation</u>**

8      Finally, Rule 23(a)(4) requires a showing that "the representative parties

9  will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

10  23(a)(4).  This requirement is grounded in constitutional due process concerns:

11  "absent class members must be afforded adequate representation before entry of a

12  judgment which binds them."  <u>Hanlon</u>, 150 F.3d at 1020 (citing <u>Hansberry v. Lee</u>,

13  311 U.S. 32, 42-43 (1940)).  The Court must resolve two questions: "(1) do the

14  named plaintiffs and their counsel have any conflicts of interest with other class

15  members and (2) will the named plaintiffs and their counsel prosecute the action

16  vigorously on behalf of the class?"  <u>Id.</u> (citing <u>Lerwill v. Inflight Motion Pictures,</u>

17  <u>Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978)).  Both the named plaintiffs and their

18  counsel must have sufficient "zeal and competence" to protect the interests of the

19  rest of the class.  <u>Fendler v. Westgate</u>, 527 F.2d 1168, 1170 (9th Cir. 1975).  This

20  requirement again tends to merge with the commonality and typicality

21  requirements.  <u>Gen. Tel. Co. of the Sw.</u>, 457 U.S. at 157 n.13.

22      In assessing whether class representatives and their counsel will vigorously

23  prosecute a class action litigation, courts may consider the actual progress of the

24  proceedings to that point.  Delays in seeking class certification, a failure timely to

25  prosecute the litigation, and any failure to comply with reasonable disclosure

26  obligations or discovery requests are factors that suggest that the class

27  representative is inadequate.  <u>E. Tex. Motor Freight Sys. Inc. v. Rodriguez</u>, 431

28

1  U.S. 395, 405 (1977) (failure to move for class certification before trial indicated

2  that representative was inadequate); <u>Andrews v. Bechtel Power Corp.</u>, 780 F.2d

3  124, 130-31 (1st Cir. 1985) (long delay in prosecution of case demonstrates

4  plaintiff's indifference to protecting class interests); <u>McGowan v. Faulkner</u>

5  <u>Concrete Pipe Co.</u>, 659 F.2d 554, 559 (5th Cir. 1981) (failure to conduct adequate

6  discovery in preparation for trial rendered representation inadequate).

7       Plaintiffs do not appear to have any conflicts of interest with other class

8  members (Appendix Ex. 1 ¶ 24; Ex. 2 ¶ 25; Ex. 3 ¶ 25; Ex. 4 ¶ 22; Ex. 5 ¶ 24), nor

9  do Defendants suggest that any conflicts exist.  Instead, Defendants contend that

10 Plaintiffs "do not have sufficiently representative claims . . . ." (Opp'n 19.)  This

11 argument pertains to the typicality requirement, which the Court has already

12 addressed.

13      Defendants also contend that the "multiple contradictions between

14 Plaintiffs' declarations and their deposition testimony" subject them to unique

15 defenses that disqualify them from acting as class representatives.  The

16 discrepancies between the declarations and depositions are certainly troubling, and

17 as discussed below, raise significant questions about the competence, if not the

18 integrity, of the Plaintiffs and their counsel.  These discrepancies might well cause

19 a fact finder to "focus on [Plaintiffs'] credibility to the detriment of the absent

20 class members' claims." <u>Wang</u>, 231 F.R.D. at 609-10.

21      Based on the declarations and deposition testimony, the Court questions

22 whether some or all of these named Plaintiffs could even survive summary

23 judgment on some of the claims.  For example, as previously discussed, the

24 majority of named Plaintiffs did not read or could not recall reading the FAQs,

25 Terms of Use, or Privacy Policy, and were not misled by anything in these

26 documents.  (<u>See</u> Objections Exs. A at 4-5, B at 10, E at 33, F at 39, G at 43.)  It is

27

28

1  doubtful that they could adequately represent the purported class where reliance is

2  an element of the claim.

3        The Court need not resolve this aspect of the adequacy analysis, because the

4  Court concludes that Plaintiffs' counsel is not equal to the task of competently

5  representing the class interests.[6]  The litigation is still in its infancy and Plaintiffs'

6  counsel has already made a series of mis-steps that have jeopardized the class

7  claims.  Plaintiffs' counsel set the tone early in the certification process when,

8  counsel failed to reveal the identities of the New Declarants prior to filing this

9  Motion.  This violated Plaintiffs' obligation to disclose the identities of

10 individuals with discoverable information.  Fed. R. Civ. P. 26(a)(1).[7]  As

11 previously discussed, Plaintiffs' misconduct forced the Court to order them to

12 produce each of the New Declarants for deposition by December 19, 2006.  (Dec.

13 6, 2006 Order.)  Plaintiffs' counsel then compounded their initial error by failing

14 to comply with the Court's Order.[8]  As a result, with the exception of Cormier and

15 Dundee, the New Declarants' declarations have been stricken.  Plaintiffs' Motion

16 relies heavily on those declarations, which magnifies the deleterious effect of the

17 conduct.

18

19

20     [6] The Court has previously expressed its concern over the adequacy of Plaintiffs'

21 counsel.  (See December 6, 2006 Order on Defendants' Ex Parte Application to Strike

22 Declarations of New Declarants 1; January 29 Hearing Transcript ("Tr.") 5:21-6:2;
   March 14 Order 4 n.5; April 19 Order 2 n.2.)

23
       [7] In tacit acknowledgment of their misconduct, counsel elected not to contest
24 Defendants' motion for attorney's fees and costs in connection with the Motion to
   Strike the Declarations of the New Declarants.  (Tr. 22:11-20.)
25

26     [8] Most New Declarants apparently refused to be deposed (see Tr. 25:10-26:1),
   suggesting that counsel, in their zeal to obtain support for their Motion, failed to
27 describe the ramifications of providing declarations.  Alternatively, the declarants
28 thought better of being cross-examined as to their statements.  See discussion infra.

1    Next, Plaintiffs' counsel "copied and pasted" numerous paragraphs into the
2  various declarations in an apparent attempt to establish that the commonality and
3  typicality requirements had been met.  (See, e.g., Appendix, Ex. 2 ¶¶ 14, 15, 16;
4  Ex. 3 ¶¶ 14, 15, 16; Ex. 4 ¶¶ 11, 12, 13; Ex. 5 ¶¶ 12, 13, 14; Ex. 6 ¶¶ 14, 15 re the
5  "core claim" concerning members /subscribers.)  This approach is especially
6  troublesome in light of Plaintiffs' cavalier attitude toward declarations under oath.
7  For example, Plaintiffs' counsel also included statements in Plaintiffs'
8  declarations that were either *admittedly* false (see, e.g., Objections, Ex. E at 31),
9  that were simply made up by the declarant (see, e.g., Objections, Ex. C at 21), or
10  for which the declarants lacked actual knowledge (see, e.g., Objections, Ex. A at
11  4.)  Counsel's explanation that "human nature being what it is, sometimes people
12  don't quite understand what they are reading and signing" and "[a] lot of times
13  maybe they don't care as much as they should" (Tr. 24:24-25:1) only causes the
14  Court to question further Plaintiffs' adequacy as class representatives.  The Court
15  is also concerned that counsel, while recognizing this aspect of "human nature,"
16  apparently failed to explain extremely simple concepts to Plaintiffs, ascertain that
17  Plaintiffs understood what they were signing, or insure the accuracy of the
18  statements Plaintiffs were being asked to swear to – statements that Plaintiffs'
19  counsel expected the Court to rely on in making its determination.  Of even greater
20  concern, counsel apparently made no effort to impress upon Plaintiffs the
21  importance of making only truthful statements when signing declarations under
22  penalty of perjury.  In all actions – but in class actions especially – it is critical that
23  the Court be able to rely on the accuracy of evidentiary submissions obviously and
24  necessarily drafted by counsel.  Counsel's lax approach to the preparation of
25  declarations in a case where they seek to represent hundreds of thousands of
26  people and seek millions of dollars is simply unacceptable.
27
28

1       Also noteworthy is the failure by Plaintiffs' counsel to dismiss the named

2  Plaintiffs Steve Uman, Ron Oakes, and Laura Tarleton.  Contrary to express

3  representations made to Defendants, Plaintiffs' counsel has not dismissed these

4  Plaintiffs from the action.  (Pines Decl. ¶¶ 14-18.)  Despite their continued

5  involvement in the case, these Plaintiffs have not responded to Defendants'

6  discovery requests and have not submitted declarations in connection with the

7  Motion.  (Id. ¶¶ 11-18.)  Again, Plaintiffs' counsel are – at best – unconcerned that

8  their acts or omissions cause delay, confusion, and unnecessary work for opposing

9  counsel and the Court, particularly in light of the fact that these Plaintiffs are not

10  even mentioned in the Motion.

11       Finally, Plaintiffs' counsel failed to plead the New Theories now presented

12  as the *central claims* in the Motion.  As previously discussed, the New Theories

13  were not included in Plaintiffs' FAC, and Plaintiffs' counsel failed to amend the

14  FAC to add those claims.  The Court described its confusion at the hearing on the

15  Motion, noting among other things, that it could not even determine precisely

16  what claims were at issue due to their ever-changing nature.  The Court pointed

17  out that Plaintiffs appeared to discard claims they had earlier vehemently asserted,

18  and had even appeared to drop claims between the moving papers and the reply.

19  Plaintiffs' counsel offered numerous alternatives in an attempt to salvage some

20  class aspect of this case, admitting that some claims were not proper class claims.

21  Counsel further admitted that in a matter before another district judge of this court,

22  he had been ordered to clarify his claims or narrow issues.  Despite this previous

23  instruction, he claimed not to understand that this Court might find the FAC

24  problematic.[9]  (Tr. 19:21-21:5.)  The Court accepted counsel's offer to prepare "a

25

26  [9] As indicated by the Court and Defendants' counsel, it was not only the FAC, but

     Plaintiffs' new and different claims in the moving papers, changed theories in the reply,

27    and description of previously unasserted "core claims" that raised questions concerning

28  Plaintiffs' theories.

1 nice little chart that shows you here are the various elements, here is our common
2 proof that goes to each one that ties to our three core issues, here is why the
3 classes should be certified on these particular claims." (Tr. 43:16-19.)  Instead of
4 a chart, however, Plaintiffs' counsel presented a 22-page brief with a new iteration
5 of categories of misconduct underlying the class claims.  Though this pleading
6 attempted to re-argue the Motion rather than address the Court's specific concerns
7 in the manner counsel had offered (and the Court had permitted), the Court
8 considered it on its merits.[10]  In an abundance of caution, the Court issued an
9 Order to Show Cause Re Leave to Amend First Amended Complaint, to determine
10 whether Plaintiffs should be allowed to proceed with their New Theories.

11       Instead, Plaintiffs' counsel exacerbated their previous conduct with their
12 inadequate response to the Court's March 14 Order, which did not include even a
13 single supporting piece of evidence.  (See April 19 Order 1.)  Consequently, the
14 Court refused to consider any evidence or argument related to the New Theories in
15 connection with this Motion.  Plaintiffs' counsel are thus directly responsible for
16 denying the class members the opportunity to pursue the full range of claims
17 allegedly available to them.

18       While counsel have apparently performed adequately and successfully in
19 other actions, they cannot simply rest on their laurels.  They must establish
20 adequacy in each case in which they seek to represent a class.  The errors and
21 misconduct described above are serious matters in and of themselves, but are even
22 more disturbing because they are not isolated incidents.  The Court has observed a
23 pattern of conduct that has jeopardized the rights of the unnamed class members,
24 and concludes that Plaintiffs' counsel would not provide adequate representation
25 for the class members as required by Rule 23(a)(4).  Because Plaintiffs fail to

26

27   [10] This, of course, forced opposing counsel to present a lengthier opposition in a time
28 frame shorter than the Court otherwise would have imposed.

1  satisfy the requirements of Rule 23(a), the Court need not analyze Plaintiffs'

2  claims under Rule 23(b).

3  **VI. <u>CONCLUSION</u>**

4      For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Class

5  Certification.

6

7

8      IT IS SO ORDERED.

9  Dated:   4-25-07

10                                                          Dale S. Fischer
                                                  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22